**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **TEAMSTERS PENSION TRUST** | : | **CIVIL ACTION** |
| **FUND OF PHILADELPHIA** | : | |
| **AND VICINITY,** *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 25-2927** |
| **LIMBCACH CO.** | : | |
| | : | |
| Defendant. | : | |

**Perez, J.**                                                                           **March 30, 2026**

### MEMORANDUM

This case involves a claim brought by Plaintiffs Teamsters Pension Trust Fund of Philadelphia and Vicinity (the "Fund") and Maria Scheeler, in her capacity as Administrator of the Fund ("Scheeler" and, together with the Fund, "Plaintiffs"), against Defendant Limbach's ("Limbach") for alleged violations of the Employment Retirement Income Security Act (ERISA). The Fund seeks to recover withdrawal liability, interest, damages, and attorney's fees and costs from Limbach. Before the Court is Plaintiffs' Default Judgment Motion pursuant to Federal Rule of Civil Procedure 55(b)(2). ECF No. 10. For the reasons discussed below, Plaintiffs' motion is granted.

### I.    Procedural History

On June 6, 2025, the Fund and Scheeler filed a complaint against Limbach, alleging Limbach owes the Fund withdrawal liability under ERISA. Compl., ECF No. 1 ¶ 1. The Fund served Limbach with process on June 9, 2025. Proof of Serv., ECF No. 7. Limbach did not answer or otherwise respond to the Complaint. On July 7, 2025, Plaintiffs requested default against

Limbach, which the Clerk entered on July 8, 2025. ECF Nos. 8 & 9. On September 16, 2025, the Fund moved for default judgment. ECF No. 10. On January 8, 2026, this Court ordered Plaintiffs to submit additional information in support of its request for reasonable attorneys' fees no later than January 30, 2026. ECF No. 13. On March 13, 2026, Plaintiffs moved for leave to file the requested information, a declaration by Counsel, and an adjusted invoice. ECF No. 14.

## II.      Factual Background[1]

The Fund is a multiemployer pension plan and an employee pension benefit plan. ECF No. 1 ¶ 6. Limbach is a corporation and employer that participated in and contributed to the Fund as required by the terms of the Supplemental Agreement to the National Master Freight Agreement (the "Agreement"). *Id.* ¶¶ 10-12; Compl. Ex. A, ECF No. 1-3. Limbach ceased remitting contributions to the Pension Fund on or about April of 2023. M. Scheeler Decl. ¶¶ 4-5, ECF No. 10-4. On August 26, 2024, the Fund determined that Limbach effected a complete withdrawal during the 2023 Fund year and demanded Limbach pay withdrawal liability in the amount of $166,525.69. ECF No. 1 ¶¶ 14-15; Compl. Ex. B, ECF No. 1-4. This amount was payable in fifty-nine quarterly installments starting on October 27, 2024. ECF No. 1 ¶¶ 14–15. Limbach did not make any payments. *Id.* ¶ 16. On March 31, 2025, the Fund demanded, via letter, that Limbach make its required payments within sixty days. *Id.*; Compl. Ex. C, ECF No. 1-5. Limbach did not respond with an arbitration demand to dispute its liability, nor did it make any payments. ECF No. 1 ¶¶ 17-18. On June 3, 2025, the Fund sent a letter to Limbach notifying it that its failure to make withdrawal liability payments resulted in a default and that, pursuant to § 4201 of ERISA, 29

---

[1] When considering motions for default judgment, the court accepts all factual allegations in the complaint as true, except those related to damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990).

U.S.C. § 1381, Limbach incurred withdrawal liability in the amount of $166,525.69. *Id.* ¶¶ 19-24; Compl. Ex. D, ECF No. 1-6.

### III.    Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs the entry of a default judgment. Rule 55(a) requires the clerk of court to enter a default against a defendant who "has failed to plead or otherwise defend and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). After the clerk enters a default, the district court "retains the discretion whether to enter a default judgment." *Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 132 (E.D. Pa. 2022).

Before determining whether to enter a default judgment, the Court must determine it has subject matter and personal jurisdiction and that the complaint establishes a legitimate cause of action. *Id.* Then, the Court must determine whether default judgment is appropriate by applying the three *Chamberlain* factors: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

### IV.    Jurisdiction

This Court has general personal jurisdiction over Limbach because its principal place of business is in Pennsylvania. ECF No. 1 ¶ 10; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) ("[W]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."). This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because the Fund's claim arises under ERISA, a federal statute.

3

## V.       Legitimate Claim

Plaintiffs establish a legitimate claim for withdrawal liability. ERISA requires employers who are part of a multiemployer defined-benefit pension plan to pay withdrawal liability when they withdraw from the plan. 29 U.S.C. § 1381(a); *see Serv. Emps. Int'l Union Loc. 32BJ, Dist. 36 v. ShamrockClean, Inc.*, 325 F. Supp. 3d 631, 635 (E.D. Pa. 2018). Withdrawal liability is the employer's fair share of a plan's "unfunded vested benefit" before the withdrawal. 29 U.S.C. § 1381(a). When an employer fails to pay withdrawal liability, a plan sponsor may make a demand for the withdrawal liability, which is payable beginning no later than 60 days after the demand. 29 U.S.C. § 1399(c)(2). If the employer does not timely make the withdrawal liability payment, even after receiving written notice from the plan sponsor, "the employer is in default under Section 1399." *ShamrockClean, Inc.*, 325 F. Supp. 3d at 636 (internal quotation marks omitted). If an employer is in default, "a plan sponsor may require immediate payment of the outstanding amount of the employer's withdrawal liability." *Id.* (citing 29 U.S.C. § 1399(c)(5)).

Plan sponsors and employers generally resolve disputes as to withdrawal liability through arbitration. *Id.* In fact, ERISA requires the parties to initiate arbitration within 60 days of the date of notification or 120 days after the date the employer requests to review the claim. 29 U.S.C. § 1401. If neither party initiates arbitration within the statutory period, "the amounts demanded by the plan sponsor become due and owing as a matter of law." *ShamrockClean, Inc.*, 325 F. Supp. 3d at 636  (citing 29 U.S.C. § 1401); *see also IUE AFL-CIO Pension Fund v. Barker & Williamson, Inc.*, 788 F.2d 118, 130 (3d Cir. 1986) (holding that employer was liable for entire amount claimed by plaintiff pension plan where it failed to request the fund to review liability or to initiate arbitration within the statutory period).

4

Here, Plaintiffs allege that: (1) Limbach completely withdrew from the Fund and, therefore, must pay withdrawal liability; (2) on March 31, 2024, the Fund demanded in writing that Limbach pay the outstanding withdrawal liability; and (3) Limbach failed to pay or initiate arbitration to dispute the amount owed within 60 days of the demand. *See* ECF No. 1 ¶¶ 14-20. Thus, the amount the Fund demanded—$166,525.69—became due and owing as a matter of law. 29 U.S.C. § 1401(b)(1). Plaintiffs' allegations establish a violation of 29 U.S.C. § 1381, and the amount of $166,525.69 is due and owing. *See IUE AFL-CIO Pension Fund*, 788 F.2d at 130.

## VI.    *Chamberlain* Factors

Each of the *Chamberlain* factors weigh in favor default judgment. First, the Fund is prejudiced by Limbach's failure to pay, as it undermines the Fund's ability to provide ongoing benefits. *See In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 316 (3d Cir. 2011). Second, because Limbach has failed to appear or respond, there is no indication of a meritorious defense. *Zurich Am. Ins. Co. v. Gutowski*, 644 F. Supp. 3d 123, 140 (E.D. Pa. 2022) ("[T]he court may presume that an absent defendant who has failed to answer has no meritorious defense, because it is not the court's responsibility to research the law and construct the parties' arguments for them.") Additionally, because Limbach did not initiate arbitration, the amount demanded by the Fund became due as a matter of law; Limbach cannot dispute the amount owed now. *See IUE AFL-CIO Pension Fund*, 788 F.2d at 130. Finally, Limbach's default appears willful, as it failed to respond despite being served. *See Trs. & Fiduciaries of Iron Workers Dist. Council (Phila. & Vicinity) Ben. & Pension Plans v. Inner City Steel*, LLC, No. 22-1432, 2022 U.S. Dist. LEXIS 230247, at \*7–8 (E.D. Pa. Dec. 21, 2022). Default judgment is therefore appropriate.

## VII.   Damages

In considering motions for default judgment, the court accepts all well-pleaded factual allegations in the complaint as true, "except those relating to the amount of damages." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). An employer's failure to make withdrawal liability amounts is treated as a delinquent contribution under 29 U.S.C. § 1145. *ShamrockClean, Inc.*, 325 F. Supp. 3d at 635. When liability under Section 1145 is established, courts "shall award" the unpaid contributions, interest, liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). Here, the Fund requests judgment in the amount of $262,964.26, which includes: (1) $166,525.69 in unpaid withdrawal liability; (2) $10,274.97 in interest from October 28, 2024, through September 15, 2025; (3) $33,305.14 in liquidated damages (20% of the unpaid withdrawal liability); and (4) $52,858.46 in attorney's fees and costs.

### A.  The Fund's Motion for Leave to File the Adjusted Invoice

As an initial matter, the Court grants the Fund's motion for leave to file out-of-time additional evidence regarding its request for attorneys' fees. Federal Rule of Civil Procedure 6(b)(1)(B) permits a court to extend the time for an untimely motion if the movant failed to act because of "excusable neglect." Fed. R. Civ. P 6(b)(1)(B). Before an untimely motion is permitted, the movant must "make a formal motion for extension of time and the district court must make a finding of excusable neglect, under the *Pioneer* factors." *Drippe v. Tobelinski*, 604 F.3d 778, 785 (3d Cir. 2010). The court must weigh (1) the danger of prejudice to the opposing party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993).

Here, Plaintiffs made a formal motion for an extension of time, and the *Pioneer* factors weigh in favor of finding that their failure to timely file was due to excusable neglect. First, there is no danger of prejudice to the opposing party because Limbach has failed to respond to any filing. Second, the length of delay neither weighs in favor nor against granting the motion. Plaintiffs were ordered to submit additional information to support their request for reasonable attorney's fees no later than January 30, 2026, but they did not respond until six weeks later. ECF No. 14. Although the six-week delay was not insubstantial, it is not monumental and did not impact the judicial proceedings in this case. *See Tobia v. Bally Total Fitness Holding Corp.*, No. 12-1198, 2013 WL 638290, at *5 (E.D. Pa. Feb. 21, 2013) (finding that a six-week delay in filing a motion for reconsideration weighed neutrally in the excusable neglect analysis).

Third, Plaintiffs' reason that unexpected, serious, and family medical issues caused the delay weighs in Plaintiffs' favor. *See Ivy v. Oberlander*, No. 1:21-CV-00109, 2022 WL 22911331, at *1 (W.D. Pa. Nov. 9, 2022) (finding that an illness to counsel and his family members and an unusually heavy case load were satisfactory reasons for an untimely filing). Fourth, nothing in the record indicates a lack of good faith on the part of Plaintiffs' counsel. In sum, the first, third, and fourth factors weigh in Plaintiffs' favor, while the second factor is neutral. Therefore, the *Pioneer* factors weigh in favor of finding Plaintiffs' untimely filing was due to excusable neglect, and the Court will consider Plaintiffs' revised documentation relating to their request for attorneys' fees.

### B. Unpaid Contributions

As discussed above, Plaintiffs have established the Fund is entitled to $166,525.69, which is the amount it demanded by letter to Limbach that Limbach failed to timely dispute. 29 U.S.C. § 1401(b)(1) ("If no arbitration proceeding has been initiated . . . the amounts demanded by the plan sponsor . . . shall be due and owing on the schedule set forth by the plan sponsor.").

### C. Interest

29 U.S.C. § 1132(g) provides that interest on unpaid contributions shall be determined by using the rate specified by the plan, or, if none, the rate prescribed by the IRS under 26 U.S.C. § 6621. Here, the Agreement does not provide for an interest rate, so the Fund applied the IRS interest rate of 7%. *See* ECF 12, Ex. 1E., 52-53.[2] Interest is calculated from the date that the first payment was not made, 29 U.S.C. § 1399(c)(5), which was October 27, 2024. ECF No. 1 ¶ 15. The Fund is entitled to interest in the amount of $10,274.97.

### D. Liquidated Damages

29 U.S.C. § 1132(g)(2)(C) requires the Court to award liquidated damages in the amount equal to the greater of: (i) interest on unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not more than 20 percent of the amount of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Here, the Agreement provides that employers who are delinquent on their withdrawal liability payments are charged an amount equal to the greater of either 20% of the unpaid delinquent amount or accumulated interest as liquidated damages. M. Scheeler Decl. ¶¶ 15, ECF No. 10-4. Here, 20% of the unpaid delinquent amount, $33,305.14, is greater than the interest amount of $10,274.97. Thus, the amount of liquidated damages due is $33,305.14.

---

[2] During the fourth quarter of 2024, which includes October 27, 2024, the underpayment interest rate was 8%. *Interest*, Internal Revenue Serv., https://www.irs.gov/payments/interest (last visited Feb. 26, 2026). For all quarters in 2025, the underpayment interest rate was 7%. *Id.* The Fund applied only the lower interest rate, which it is entitled to, so this Court does not opine on whether the higher 8% interest rate should have been applied.

### E.  Attorney's Fees

The Fund is entitled to "reasonable attorneys' fees and costs of the action," 29 U.S.C. § 1132(g)(2), but it bears the burden of proving its request is reasonable. *Strauss v. Springer*, 817 F. Supp. 1237, 1243 (E.D. Pa. 1993). Reasonable attorneys' fees are calculated using the lodestar method. *Id.* at 310. First, the Court must determine what constitutes a reasonable billing rate. *Id.* Second, it must decide how many billable hours are reasonable. *Id.* Third, it must multiply the reasonable billable hours expended by the reasonable hourly rate to attain the lodestar. *O'Farrell v. Twin Bros. Meats*, 889 F. Supp. 189, 192 (E.D. Pa. 1995).

The moving party "must 'submit evidence supporting the hours worked and rates claimed.'" *Strauss*, 817 F. Supp. at 1243 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Where the court finds that the hours were not "reasonably expended" through poor "billing judgment," however, proper adjustments must be made. *Hensley*, 461 U.S. at 433.

### 1.  Reasonable Rate

The Court determines whether an hourly rate is reasonable by comparing the amount billed to the community's prevailing market rate for similar work. *Washington v. Phila. Cnty. Ct. of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996) (citation omitted). Courts determine the market rate in the community based on "the experience and skill of the attorneys" compared to the rates "of comparable lawyers in the private business sphere." *Student Pub. Interest Research Group v. AT & T Bell Lab.*, 842 F.2d 1436, 1447 (3d Cir. 1988). Courts must also consider the complexity of the legal theories argued, the extent of litigation, the use of good faith, and the extent of the plaintiff's success. *Hensley*, 461 U.S. at 434-40.

Here, the Fund requests attorney's fees of $52,216 and costs of $642.46. Counsel for the Fund, Richard J. De Fortuna and Stephen C. Richman, billed at a rate of $530 through June 1, 2025, and $760 thereafter. *See* De Fortuna Decl. ¶ 10, ECF No. 10-5. De Fortuna has practiced law for 24 years, and Richman has practiced for 54 years. *Id.* ¶ 11. De Fortuna is also experienced litigating ERISA cases, as he has been lead counsel in "thirteen (15) [sic] cases in the last five years." *Id.* De Fortuna and Richman spent 81.91 hours litigating this case. Invoice, ECF No. 14-1 at 9.

Plaintiffs' counsel compares their hourly rates to the hourly rates charged by Community Legal Service of Philadelphia (CLSP) when litigating cases where it is possible to recover attorneys' fees. *See* De Fortuna Decl. ¶ 11, ECF No. 10-5. CLSP bases its rates on "Philadelphia law firm market survey data and increases in the Consumer Price Index." *See Attorney Fees*, CLSP, https://clsphila.org/about-community-legal-services/attorney-fees/ (last visited Mar. 11, 2026). As of January 19, 2023, CLSP has charged $630 to $715 for attorneys with 21 to 25 years' experience and $735 to $850 for attorneys with more than 25 years' experience. *Id.* These rates are reasonable. *See Regional Emps.' Assurance Voluntary Emps.' Beneficiary Ass'n Trust v. Castellano*, 164 F. Supp. 3d 705, 714 (E.D. Pa. 2016) ($400 to $700 per hour is reasonable rate in ERISA litigation).

### 2. Reasonable Hours

The Fund asks for attorneys' fees stemming from 81.91 hours of work by counsel dating back to May 1, 2024, over one year before initiating this action. ERISA does not allow recovery for attorneys' fees incurred during pre-litigation administrative proceedings. *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 313 (3d Cir. 2008) (explaining ERISA's fee award provision, which allows for recovery of attorney's fees and costs *of the action* does not include pre-litigation "proceedings," including request for administrative review of benefits). Time spent drafting the

10

complaint is considered part of the litigation, however, even though it occurred pre-filing. *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d at n.10. Counsel's first-time entries regarding this case begin on May 1, 2024, over a year before filing the Complaint. *Compare* Invoice, ECF No. 14-1 at 1, *with* ECF No. 1. Counsel billed 48.2 hours before and including filing the six-page Complaint. Of those hours, only 9.7 hours were spent actively working on this judicial action.

Accordingly, the Court shall reduce the hours billed to 43.4 hours. *See United States v. Eleven Vehicles*, 200 F.3d 203, 211–12 (3d Cir. 2000) (noting that generally the district court may not reduce requested fees without motion from opposing party, but the court "should prune the fees requested" that "are not compensable" under ERISA); *see also* 29 U.S.C. § 1132(g)(2)(D); *Hanhemann*, 514 F.3d at 313. These are the hours spent that are attributable to this action.[3] Accepting counsel's billing rates, the billing rate of $530 applies only to 5.7 hours, and the subsequent billing rate of $760 applies to the remaining 37.7 hours. Thus, applying the lodestar method, the Fund is entitled to $31,673 in attorney's fees. The Fund is also entitled to $642.46 in costs. ECF No. 14-1 at 4 ¶ 12.

## VIII.   Conclusion

For the foregoing reasons, Plaintiffs' Motion for Default Judgement will be granted, but the attorney's fees are adjusted to $31,673. An appropriate order follows.

---

[3] *See* ECF No. 14-1 at 8 (6/4/2024 Preparation of Complaint and 6/5/2025 Revisions to Complaint), 12 (3/26/2025 Update of Complaint and Legal Research and 3/27/2025 Correspondence re: updating Complaint and discussing next steps), 13–15 (4/2/2025 Legal research for Complaint, 4/24/2025 Review of correspondence and documentation for Complaint, 5/20/2025 Update of Complaint, 6/2/2025 Review of proposed Complaint, and all entries on and after 6/5/2025).